IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

March 06, 2024 03:19 PM
SCT-Civ-2023-0021
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **MYRAH KEATING-SMITH,** | ) **S. Ct. Civ. No. 2023-0021** |
| Appellant/Petitioner, | ) Re: Super. Ct. Civ. No. 003/2021 (STT) |
| | ) |
| v. | ) |
| | ) |
| **HUSSEIN MUSTAFA,** | ) |
| Appellee/Respondent. | ) |
| | ) |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas-St. John
Superior Court Judge: Hon. Sigrid M. Tejo

Argued: October 10, 2023
Filed: March 6, 2024

Cite as: 2024 VI 12

**BEFORE:** **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and **IVE ARLINGTON SWAN**, Associate Justice.

**APPEARANCES:**

**Mark D. Hodge, Esq. (argued)**
**Maria Tankenson Hodge, Esq.**
Hodge & Hodge
St. Thomas, U.S.V.I.
    *Attorneys for Appellant,*

**Carol A. Rich, Esq. (argued)**
**Gregory Adam Thorp, Esq.**
Dudley Rich LLP
St. Thomas, U.S.V.I.
    *Attorneys for Appellee.*

## OPINION OF THE COURT

**HODGE, Chief Justice.**

¶ 1 Myrah Keating-Smith appeals from the Superior Court's April 11, 2023 order, which reversed, pursuant to the procedure codified in Superior Court Rule 322, a February 4, 2021

judgment entered by the Magistrate Division that ordered (1) immediate restitution to her of a premises occupied by appellee Hussein Mustafa, and (2) the release to her of all rental monies held in escrow. For the following reasons, we reverse the Superior Court's April 11, 2023 order dismissing the action for lack of subject-matter jurisdiction and vacate the portion of the February 4, 2021 judgment ordering distribution of the escrowed rent.

## I. BACKGROUND

¶ 2    In 2007, Keating-Smith entered into a commercial lease agreement with Hussein Mustafa, in which Mustafa leased the premises described as Units 1, 2, 3, and 4 Meada's Plaza, Building #2, Parcel No. 6B Cruz Bay Town, St. John (hereafter the "premises"). Four years later, the parties executed a written commercial lease agreement renewing the 2007 lease for an additional five-year period from March 1, 2011, to February 28, 2016. This lease agreement included an option to renew the lease for an additional five-year period from March 1, 2016, to February 28, 2021. Such extension, however, was not automatic, with the lease providing that Mustafa could request an extension, in writing via registered mail no less than 90 days before February 28, 2016—but only if he was not in default of the existing lease's terms—and that such an extension would only occur if the parties were to agree on the rent amount prior to expiration of the existing lease. Nevertheless, the lease provided that "in the event of Tenant holding over after the termination of this lease, thereafter the tenancy shall be from month-to-month in the absence of a written agreement to the contrary."

¶ 3    Mustafa continued to occupy the premises after this lease expired on February 28, 2016. The parties strongly disagree as to the basis on which Mustafa did so; while Mustafa maintains that the lease had been renewed for an additional five-year period, Keating-Smith asserts that Mustafa occupied the premises as a month-to-month holdover tenant.

¶ 4    On August 7, 2020, Keating-Smith initiated a forcible entry and detainer ("FED") action against Mustafa in the Magistrate Division of the Superior Court, seeking to recover possession of the premises. The Magistrate Division did not immediately set a hearing date due to the COVID-19 pandemic, but issued a notice of hearing on December 15, 2020, advising the parties that the hearing would occur on January 7, 2021. A week before that hearing, Mustafa filed a motion to dismiss the FED action for lack of subject-matter jurisdiction, alleging primarily that the Magistrate Division lacked the authority to adjudicate the matter because he purportedly possessed a valid, unexpired lease. Keating-Smith opposed the motion, asserting that it would be premature to rule on it without an evidentiary hearing and that in any event the appropriate remedy would not be dismissal for lack of subject-matter jurisdiction but a transfer of the action to the Civil Division.

¶ 5    At Mustafa's request, the Magistrate Division rescheduled the January 7, 2021 hearing to January 26, 2021. At the hearing, both Keating-Smith and Mustafa, as well as Mustafa's son, provided conflicting testimony as to whether the lease had been renewed for an additional five-year period, or whether Mustafa was presently occupying the premises as a month-to-month holdover tenant. The parties also presented conflicting testimony as to whether Mustafa was in arrears on his rent payments. In particular, Keating-Smith testified to Mustafa failing to pay back rent pursuant to the terms of a repayment plan he entered into with her and asserted that Mustafa had recently begun to withhold monthly rent and place it in escrow with his legal counsel.

¶ 6    The Magistrate Division took the matter under advisement, and ultimately issued a February 4, 2021 judgment in favor of Keating-Smith, along with an opinion explaining its reasoning. The Magistrate Division concluded that the written lease agreement between the parties had expired on February 28, 2016, and had never been renewed, and that after February 28, 2016, Mustafa occupied the premises as a month-to-month tenant. Specifically, the Magistrate Division

determined that Mustafa had never taken the steps required by the lease agreement to exercise the five-year renewal option, and that any purported oral lease agreed to after the written lease expired was invalid under the statute of frauds. Additionally, the Magistrate Division found that Mustafa had wrongfully withheld rent. In the February 4, 2021 judgment, the Magistrate Division entered judgment in favor of Keating-Smith, ordered immediate restitution of the premises, and also ordered Mustafa to pay to Keating-Smith all rental monies that had purportedly been held in escrow.

¶ 7     On February 12, 2021, Mustafa filed a notice of appeal from the February 4, 2021 judgment with the Superior Court.[1] *See* SUPER. CT. R. 322(b). Although Mustafa sought a partial stay of the provisions of the February 4, 2021 judgment directing payment of the monies held in escrow, at no point did Mustafa seek to stay the portion of the judgment which ordered restitution of the premises. After considering briefs filed by the parties, the Superior Court issued its April 11, 2023 order, which reversed the February 4, 2021 judgment and remanded the case to the Magistrate Division to dismiss Keating-Smith's action for lack of subject-matter jurisdiction. Specifically, the Superior Court concluded that the FED statute bars a court from inquiring into the existence of a lease agreement, and that the Magistrate Division therefore should not have adjudicated any portion of the action on the merits and instead advised Keating-Smith to initiate an appropriate action in the Civil Division of the Superior Court. Keating-Smith timely filed a notice of appeal with this Court on May 1, 2023. *See* V.I. R. APP. P. 5(a)(1).

---

[1] Although the Magistrate Division is not a separate court but one of the divisions that constitute the Superior Court, for ease of readability we use "Superior Court" to refer to the judge who issued the April 11, 2023 order and "Magistrate Division" to the magistrate judge who issued the February 4, 2021 judgment.

## II. DISCUSSION

### A. Appellate Jurisdiction

¶ 8     This Court typically possesses jurisdiction only over "appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a); 48 U.S.C. § 1613a(d). Section 32(a) embodies the final judgment rule, which generally requires parties to "raise all claims of error in a single appeal following final judgment on the merits." *Enrietto v. Rogers Townsend & Thomas PC*, 49 V.I. 311, 315 (V.I. 2007). Although the Superior Court's April 11, 2023 order remands the case to the Magistrate Division for purposes of dismissing Keating-Smith's FED action, it nevertheless constitutes a final order because the remaining proceeding in the Magistrate Division is "purely ministerial" given that the Superior Court has given the Magistrate Division no discretion other than to dismiss the action. *See SBRMCOA, LLC v. Beachside Assocs., LLC*, S. Ct. Civ. No. 2015-0053, 2015 WL 9581398, at *4 (V.I. Dec. 28, 2015) (unpublished) (collecting cases). Therefore, we may exercise jurisdiction over this appeal.

### B. Failure to Post Appeal Bond

¶ 9     Although not raised by the Superior Court or any of the parties, we note that the FED statute expressly provides that

> If judgment is rendered against the defendant for the restitution of the real property described in the complaint or any part thereof, <u>no appeal shall be taken by the defendant from such judgment until, in addition to any undertaking otherwise required by law upon appeal, he gives an undertaking to the adverse party, with two sureties, who shall justify in like manner as bail upon arrest, for the payment to the plaintiff of twice the rental value of the real property</u> of which restitution is adjudged from the rendition of such judgment until final judgment in the action, if such judgment shall be affirmed upon appeal.

28 V.I.C. § 788 (emphasis added). In this case, the record contains no evidence whatsoever that Mustafa complied with this provision prior to the internal appeal to the Superior Court. Because

the language in the FED section providing that "no appeal shall be taken" appears to limit the authority of a court to adjudicate certain FED appeals, we must satisfy ourselves that Mustafa's failure to comply with this statute did not require the Superior Court—and, on second appeal, this Court—to dismiss his appeal *sua sponte*.

¶ 10    We conclude that Mustafa's failure to post the appeal bond required by section 788 does not affect the authority of the Superior Court or this Court to adjudicate his appeal from the Magistrate Division's February 4, 2021 judgment.  As the United States District Court of the Virgin Islands correctly recognized in *St. Croix Hotel Corp. v. Assoc. of St. Croix Condo. Owners*, 18 V.I. 591 (D.V.I. 1981), the Supreme Court of the United States determined that a word-for-word identical provision in Oregon's FED statute was facially unconstitutional in violation of the Due Process Clause of the Fourteenth Amendment.  *See Lindsey v. Normet*, 405 U.S. 56, 74-79 (1972).  We agree with the District Court that there is absolutely no way to distinguish section 788 from the Oregon statute declared unconstitutional, and that therefore neither this Court nor the Superior Court are authorized to dismiss an appeal from an FED judgment simply because a defendant failed to comply with section 788.  *See Webster v. People*, 60 V.I. 666, 677-78 (V.I. 2014) (holding  it "plain" that an unconstitutional statute cannot be enforced) (collecting cases).

### C. Mootness of Premises Restitution Judgment

¶ 11    In her appellate brief, Keating-Smith writes in her statement of facts that

> Tenant did not vacate the premises until February 28, 2021, after the Magistrate Judge's February [4], 2021[] Judgment of Eviction, after which Tenant's counsel sent Landlord's counsel notice on March 1, 2021, that Tenant had vacated the Premises on February 28, 2021.

(Appellant's Br. 10.)  Keating-Smith does not cite any portion of the record to support this representation that Mustafa vacated the premises on February 28, 2021.  Nor does the Superior

Court's April 11, 2023 order make such a finding. The record, however, does reflect that Mustafa never sought a stay of the portion of the February 4, 2021 judgment that ordered him to vacate the premises, but only a partial stay of the portion requiring payment of the escrow funds. Upon questioning at oral argument, counsel for Keating-Smith again represented to this Court that Mustafa did in fact vacate the premises on February 28, 2021, even though the parties never informed the Superior Court of this fact. This raises another question not addressed by the parties in their briefs: did Mustafa's compliance with the February 4, 2021 judgment in vacating the premises and returning it to Keating-Smith render his appeal of that portion of the February 4, 2021 judgment moot?

¶ 12    Unlike the federal courts, where the question  whether a case has become moot directly implicates subject-matter jurisdiction, "the mootness doctrine in the Virgin Islands is a non-jurisdictional claims-processing rule that has been incorporated into Virgin Islands law only as a matter of judicial policy." *Haynes v. Ottley*, 61 V.I. 547, 558 (V.I. 2014). Yet while many claims-processing rules are waived if not asserted by a party because they serve to protect the interests of that particular party, and thus should not be invoked by courts *sua sponte*, there remains a class of claims-processing rules that courts may raise *sua sponte*: those rules which "implicate[] judicial interests beyond those of the parties." *Simon v. Joseph*, 59 V.I. 611, 629 (V.I. 2013). This may occur when, for instance, the claims-processing rule safeguards a right or duty owed to the court, such as payment of a filing fee, *see Mustafa v. Camacho*, 59 V.I. 566, 571 n.2 (V.I. 2013), prevents potentially inconsistent adjudications of the same issue in different courts, *see Simon*, 59 V.I. at 630, or protects the rights of nonparties to the lawsuit, *see Sam's Food Distributors, Inc. v. NNA & O, LLC*, 73 V.I. 453, 461 n.2 (V.I. 2020). In fact, the same claims-processing rule could be waivable in one context but not waivable in another. *Compare Tip Top Constr. Corp. v. Gov't of*

*the V.I.*, 60 V.I. 724, 730 n.2 (V.I. 2014) (characterizing ripeness as a claims-processing rule, application of which was waived for not being timely asserted) *with Simon*, 59 V.I. at 629 (*sua sponte* invoking ripeness as a basis for dismissal, despite ripeness ordinarily being a waivable claims-processing rule, because considering the unripe appeal would affect judicial interests beyond those of the parties by disrupting comity between courts).

¶ 13     As noted above, in this case the record reflects that the Superior Court had never been notified that Mustafa vacated the premises on February 28, 2021, and—for whatever reason—Keating-Smith chose not to seek dismissal of Mustafa's internal appeal on mootness grounds or to raise mootness as an issue before this Court.  Nevertheless, despite the mootness doctrine typically being a waivable claims-processing rule in the Virgin Islands, we conclude, for the reasons that follow, that courts may raise it *sua sponte* because in the specific context of an appeal from a FED judgment in which the respondent vacated the premises after that judgment was rendered, consideration of the moot appeal affects important judicial interests beyond those of the parties themselves.

¶ 14     The FED statute is among the original provisions of the Virgin Islands Code, tracing its origins to the 1921 Codes.  Like the many states that enacted similar FED statutes in the 18th, 19th and 20th centuries, the Virgin Islands did so for the specific purpose of altering outdated common law rules that rendered it unacceptably difficult for a landlord to evict a tenant through the legal process but unacceptably easy for a landlord to expel a tenant using force.  *See Blyden v. Sugar Estates Assocs., Ltd. Partnership*, 14 V.I. 227, 234-35 (V.I. Super. Ct. 1977) (holding that the FED statute "provides a speedy judicial remedy for the recovery of possession of leased property" while eliminating the right to self-help).  As the Supreme Court of the United States explained,

> At common law, one with the right to possession could bring an action for

ejectment, a relatively slow, fairly complex, and substantially expensive procedure. But, as [state] cases have recognized, the common law also permitted the landlord to enter and expel the tenant by force, without being liable to an action of tort for damages, either for his entry upon the premises, or for an assault in expelling the tenant, provided he uses no more force than is necessary, and does no wanton damage. The landlord-tenant relationship was one of the few areas where the right to self-help was recognized by the common law of most States, and the implementation of this right has been fraught with violence and quarrels and bloodshed. An alternative legal remedy to prevent such breaches of the peace has appeared to be an overriding necessity to many legislators and judges.

*Lindsey v. Normet*, 405 U.S. 56, 71 (1972) (internal citations omitted). In affirming the constitutionality of such FED statutes, the Supreme Court further recognized that

There are unique factual and legal characteristics of the landlord-tenant relationship that justify special statutory treatment inapplicable to other litigants. The tenant is, by definition, in possession of the property of the landlord; unless a judicially supervised mechanism is provided for what would otherwise be swift repossession by the landlord himself, the tenant would be able to deny the landlord the rights of income incident to ownership by refusing to pay rent and by preventing sale or rental to someone else. Many expenses of the landlord continue to accrue whether a tenant pays his rent or not. Speedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession when his lease or rental agreement gives him the right to peaceful and undisturbed possession of the property. Holding over by the tenant beyond the term of his agreement or holding without payment of rent has proved a virulent source of friction and dispute. We think [the state] was well within its constitutional powers in providing for rapid and peaceful settlement of these disputes.

*Id.* at 72-73. In other words, the FED statute not only seeks to vindicate the private interests of a landlord to obtain redress in a specific case, but also furthers the societal interests of promoting the free use of land as well as ensuring that the judicial system provides a speedy and relatively inexpensive legal mechanism to resolve landlord-tenant disputes so that the parties need not resort to violence or self-help.

¶ 15    It is these societal interests which are impaired by consideration of an otherwise-moot FED appeal. The courts that have considered the question have universally held that a FED action or an appeal from an FED judgment—or at least the portion seeking removal of the tenant—becomes

moot if the tenant vacates the premises, subject perhaps only to certain verry narrow exceptions not implicated in the present appeal.[2]  *See, e.g., Graber v. Griffin*, 500 P.2d 35 (Kan. 1972) (dismissing tenant's FED appeal as moot when premises came into the possession of the landlord and the landlord's new tenant); *Long v. MacDonald*, No. 3-02-10, 2002 WL 31007937, at *2 (Ohio Ct. App. Sept. 9, 2002) (unpublished) ("The purpose of the forcible entry and detainer statutes is to provide a summary, extraordinary, and speedy method for the recovery of possession of real estate. Once a landlord has been restored to property, the forcible entry and detainer action becomes moot because, having been restored to the premises, there is no further relief that may be granted.").

¶ 16     Although courts characterize the departure of the tenant from the property after entry of an FED judgment as rendering an appeal from that portion of the FED judgment moot, this may not always necessarily be the case.  As this Court previously recognized, a matter typically becomes moot when a decision rendered by a court "would have no practical impact on the particular litigants in th[e] case." *V.I. Conservation Soc'y, Inc. v. Golden Resorts, LLLP*, S. Ct. Civ. No. 2009-0026, 2010 WL 2633594, at *4 (V.I. June 23, 2010) (unpublished).  Yet one remedy would seem to provide an obvious practical benefit to a tenant who was to successfully obtain reversal on appeal: restoring the tenant to possession of the premises.  But courts, even dating back as far as to the interpretation of the very first FED statutes in the United States, have declined to provide a tenant with this remedy if the tenant already vacated the premises and restored possession to the

---

[2] For instance, one court has determined that an FED appeal is not moot notwithstanding the tenant vacating the premises after the landlord obtained an FED judgment when the tenant demonstrated that he participated in a federal housing voucher program and that those federal benefits may be terminated as a collateral consequence to a judgment of eviction. *See Richmond's Ent., Inc. v. Anderson*, No. 26674, 2016 WL 68398 (Ohio Ct. App. Feb. 19, 2016) (unpublished).

landlord. *See, e.g., Crossings Dev. Ltd. Partnership v. H.O.T., Inc.,* 645 N.E.2d 159, 163 (Ohio Ct. App. 1994) (holding that a trial court would lack the authority "to oust plaintiff from possession of the premises and restore those premises to defendant" in the event that the FED judgment were reversed by the appellate court); *Huston v. Big Bend Land Co.,* 179 P. 101, 134-35 (Wash. 1919) (holding that a tenant who had wrongfully been evicted through a void FED judgment could not repossess the property, when the landlord rented it to a new tenant after regaining possession under that judgment); *Bull v. Olcott*, 2 Root 472, 473 (Conn. Super. Ct. 1796) ("[A] restoration of the possession cannot be awarded in the case of forcible entry, nor in ejectment, upon a reversal of a judgment in error.").

¶ 17    While these courts have not fully explained the reasoning for rejecting restoration to the tenant as a remedy, the rationale is nevertheless clear: if appellate courts routinely divested the landlord of a property after the landlord already retook possession based on a FED judgment against the tenant that had never been stayed pending appeal, it would directly undermine the policy considerations that led to the enactment of the FED statute in the first place. The landlord, having successfully regained possession of the property through the judicial process, might be compelled, at some uncertain future date, to permit a tenant whose lease expired or who violated the terms of the lease—through non-payment of rent or otherwise—to reoccupy the property until ousted again. This would not only interfere with the landlord's own use of the property but may also violate the rights of a non-party to the litigation who entered into a lease agreement for the property after the landlord regained possession.[3] Such an approach also increases the length and

---

[3] It is likely for this reason that title 28, section 788 of the Virgin Islands Code attempted to disallow a defendant from appealing a judgment rendered in a FED action unless "he gives an undertaking to the adverse party, with two sureties . . . for the payment to the plaintiff of twice the

complexity of the FED process, and casts into doubt the ability of the court system to provide a speedy and inexpensive legal mechanism to restore land to a landowner.

¶ 18    For these reasons, we conclude that mootness, in the specific context of an FED appeal where the respondent has returned possession of the premises to the petitioner, constitutes a mandatory non-waivable claims-processing rule that this Court and the Superior Court must invoke unless some exception to the mootness doctrine applies.  Thus, while Mustafa's appeal of the portion of the February 4, 2021 judgment ordering payment of the escrowed rent has always been a live controversy, his appeal of the portion of that judgment requiring him to vacate the premises and restore it to Keating-Smith became moot when he actually did so. In this context, the Superior Court—had it known that Mustafa had vacated the premises—would have been required to dismiss that portion of his appeal and adjudicate only his challenge to the payment of the escrow monies.

¶ 19    Nevertheless, we decline to partially vacate the Superior Court's April 11, 2023 order on this ground. Because the Superior Court had no knowledge that the appeal had become moot, it considered the jurisdictional issue raised by the parties entirely on its merits.  Moreover, the parties have fully briefed the jurisdictional issue in their appeal to this Court. As shall soon become evident in our discussion of the merits, the extent of a court's jurisdiction to hear an FED matter is largely an issue of first impression and is certainly capable of repetition; yet, it has continuously evaded meaningful review by this Court for more than 15 years.  *Haynes,* 61 V.I. at 559 (collecting cases).  Consequently, we exercise our discretion to review the correctness of the Superior Court's decision to vacate the Magistrate Division's judgment for lack of subject-matter jurisdiction, in

---

rental value of the real property of which restitution is adjudged from the rendition of such judgment until final judgment in the action."

order to provide a definitive answer to the issues raised by the parties and thus provide the Superior Court with guidance as to how to apply the FED statute in future cases. *V.I. Taxi Assoc. v. West Indian Co., Ltd*., 66 V.I. 473, 489 (V.I. 2017).

### D. Standard of Review

¶ 20    Ordinarily, an appellate court will "review factual findings from the finder of fact for clear error and exercise plenary review over legal conclusions." *St. Thomas–St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).  But the parties in this case greatly disagree as to the appropriate standard of review that the Superior Court—and by extension, this Court—should apply when reviewing a FED judgment issued by the Magistrate Division.  In her brief, Keating-Smith contends that the Superior Court erred by failing to defer to the Magistrate Division's factual findings and credibility determinations with respect to several matters relevant to whether Mustafa possessed a colorable claim of right to continued possession of the premises. Mustafa, however, maintains that the findings of the Magistrate Division are subject to plenary review because the question supposedly implicates the subject-matter jurisdiction of the Magistrate Division to preside over the FED action.

¶ 21    As  explained in greater detail in the following section, none of the above issues relate to subject-matter jurisdiction.  Rather, they—at best—relate to the merits of a FED action. But even if this Court were to treat these facts as presenting jurisdictional issues, both Mustafa and the Superior Court are mistaken that a less deferential standard of review is appropriate. Certainly, an appellate court exercises plenary review on the question whether a trial court possessed subject-matter jurisdiction since the existence or absence of such jurisdiction is ultimately a question of law. *See Willis v. People*, 71 V.I. 789, 8795 (V.I. 2019).  Yet the courts that have considered the question have universally held that factual findings—even those directly relevant or even

dispositive of the existence of subject-matter jurisdiction—remain subject to deferential clear error review on appeal. *See, e.g., In re Southern Recycling, LLC*, 982 F.3d 374, 379 (5th Cir. 2020) ("Where, as here, the district court has expressly relied on its resolution of disputed jurisdictional facts, those findings are reviewed for clear error."); *Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) ("We review *de novo* a dismissal for lack of subject matter jurisdiction . . . and review findings of jurisdictional facts for clear error."); *Schneer v. Llaurado*, 195 Cal.Rptr.3d 858, 865 (Cal. Ct. App. 2015) ("[T]he notion an appellate court may independently reweigh the trial court's findings of jurisdictional facts runs counter to the fundamental principle that appellate courts do not reweigh facts and generally must defer to the trial court's resolution of credibility and conflicts in the evidence."); *Bridgeforth v. Thornton*, 847 N.E.2d 1015, 1023 (Ind. Ct. App. 2006) ("[W]here, as here, the jurisdictional facts were disputed and the trial court conducted an evidentiary hearing to address the issue, the applicable standard of review requires this Court to give deference to the trial court's findings of jurisdictional facts."). Rather, it is only the "ultimate legal conclusion"—i.e., the application of the pertinent law to the jurisdictional facts—to which an appellate court may exercise undeferential plenary review. *See Valentin v. Hospital Bella Vista*, 254 F.3d 358, 365 (1st Cir. 2001). Importantly, this approach is consistent with the standard of review we previously endorsed in the context of personal jurisdiction determinations. *See Molloy v. Independence Blue Cross*, 56 V.I. 155, 169 (V.I. 2012) ("We apply a de novo standard of review to a determination by the Superior Court that it lacked personal jurisdiction. . . . However, to the extent the Superior Court made findings of fact regarding personal jurisdiction from an evidentiary hearing, we accept those findings unless they are shown to be clearly erroneous.") (internal citations omitted). Consequently, we reject Mustafa's invitation to exercise plenary review over any of the factual determinations made by the Magistrate Division concerning jurisdiction in the

underlying proceeding.

### E. Subject-Matter Jurisdiction Over the FED Action

¶ 22    Having addressed all procedural matters, we now turn to the heart of this appeal: whether the Superior Court correctly determined that the Magistrate Division lacked subject-matter jurisdiction to enter the February 4, 2021 judgment. Specifically, the Superior Court concluded that the Magistrate Division lacked subject-matter jurisdiction to issue the judgment because its inquiry was barred by title 28, section 793 of the Virgin Islands Code, which provides, in its entirety, as follows:

> In an action to recover the possession of any land, tenement or other real property, where the entry is forcible or when the possession thereof is unlawfully held by force, the merits of the title shall not be inquired into, and three years' quiet possession of the premises immediately preceding the commencement of such action by the party in possession, or those under whom he holds, may be pleaded in bar thereof, unless the estate of such party in the premises is ended.

28 V.I.C. § 793. According to the Superior Court, the Magistrate Division ran afoul of this prohibition because section 793 precluded it from adjudicating the question of whether a valid unexpired lease existed between the parties and Mustafa had raised a facially bona fide and good faith claim in support of his continued possession of the premises. For the reasons that follow, we conclude that the Superior Court erred (1) by treating section 793 as a jurisdictional limitation, and (2) construing section 793 as preventing a court from inquiring into the validity of a lease agreement.

   1.   Section 793 Does Not Limit the Subject-Matter Jurisdiction of a Court

¶ 23    Neither the Superior Court nor the parties can necessarily be faulted for believing that section 793 establishes a jurisdictional requirement. In one of our earliest cases, this Court used jurisdictional language, albeit in dicta, to describe section 793. *V.I. Port Auth. v. Joseph*, 49 V.I.

424, 429 (V.I. 2008). The only authority relied upon by this Court, however, was the decision of the United States Court of Appeals for the Third Circuit in *C.M.L., Inc. v. Dunagan*, 904 F.2d 189 (3d Cir. 1990), which also used jurisdictional language to describe the elements of the FED statute, but without citing to any legal authority or providing any explanation as to how or why those elements were jurisdictional other than *Inter Car Corp. v. Discount Car Rental*, 21 V.I. 157 (V.I. Super. Ct. 1984), which itself cited no legal authority for that proposition. Notably, this Court's reliance on *Dunagan* was highly understandable, in that at the time this Court decided *Joseph* it had still been an open question as to whether this Court even possessed the authority to decline to follow the Third Circuit's interpretation of Virgin Islands law. *See In re People of the V.I.,* 51 V.I. 374, 389 n.9 (V.I. 2009) (stating, for the first time, that decisions of the Third Circuit "only represent persuasive authority when this court considers an issue); *Defoe v. Phillip*, 702 F.3d 735 (3d Cir. 2012) (accepting certiorari over a judgment of this Court to determine whether this Court possessed the authority to reject a prior Third Circuit precedent construing a Virgin Islands statute, ultimately concluding that this Court possesses such authority).

¶ 24    Since the Third Circuit first decided *Dunagan* and this Court decided *Joseph*, the Supreme Court of the United States has progressively directed courts to exercise substantially more discipline in characterizing statutory requirements, elements of causes of action, and the like as jurisdictional. The Supreme Court of the United States has characterized judicial decisions that dismiss complaints "for lack of jurisdiction" but "without explicitly considering whether the dismissal should be for lack of subject-matter jurisdiction or for failure to state a claim" as "drive-by jurisdictional rulings" which "should be accorded no precedential effect." *Arbaugh v. Y&H Corp*. 546 U.S. 500, 511 (2006). Shortly thereafter, in *Morrison v. National Australia Bank Ltd*., 561 U.S. 247 (2010), the United States Supreme Court held that a question pertaining to the

*Keating-Smith v. Mustafa*        2024 VI 12
S. Ct. Civ. No. 2023-0021
Opinion of the Court
Page 17 of 29

extraterritorial reach of a statutorily created cause of action was a merits question, and not a question of subject-matter jurisdiction. because it did not relate to the court's power to hear the case. And a year later, in *Henderson v. Shinseki*, 562 U.S. 428 (2011), it held that the mere fact that a requirement or limitation is set forth in a statute does not render it automatically jurisdictional; rather, such a provision is only jurisdictional if a legislature intended to limit a court's power to hear a case.

¶ 25    Like the United States Supreme Court, this Court and the Third Circuit also began to exercise greater restraint with respect to characterizing requirements as jurisdictional. After the Third Circuit invoked the United States Supreme Court's new decisions to overrule several of its own long-standing precedents that had erroneously characterized certain matters as jurisdictional, *see, e.g., Gov't of the V.I. v. Martinez*, 620 F.3d 321 (3d Cir. 2010); *Archer v. Caribbean Auto Mart, Inc.*, 379 Fed.Appx. 157 (3d Cir. 2010), this Court cited those decisions to overrule several of its own prior cases as well, recognizing that concepts such as the time to file a notice of appeal or the mootness doctrine were not limitations on the subject-matter jurisdiction of the courts of the Virgin Islands, but rather non-jurisdictional claims-processing rules. *See, e.g., Ottley v. Estate of Bell*, 61 V.I. 480 (V.I. 2014); *Brooks v. Gov't of the V.I.*, 58 V.I. 417 (V.I. 2013); *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558 (V.I. 2012); *First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594 (V.I. 2011); *Vazquez v. Vazquez*, 54 V.I. 485 (V.I. 2010).

¶ 26    Here, the statutory language that the Third Circuit had deemed jurisdictional in *Dunagan* is, in fact, not jurisdictional, but rather sets forth an element of an FED action. Section 793 does not bear any of the hallmarks of a statute that intends to limit the jurisdiction of the Superior Court. Section 793 does not describe this as a jurisdictional bar, calling it only a limitation. This is in stark contrast to other parts of the FED statute which do in fact specifically reference jurisdiction.

*Keating-Smith v. Mustafa*                     2024 VI 12
S. Ct. Civ. No. 2023-0021
Opinion of the Court
Page 18 of 29

*See* 28 V.I.C. § 782(b) ("If the unpaid rent or the value of the real property involved does not exceed $500, exclusive of interest and costs, the Superior Court shall have exclusive jurisdiction of such action. In all other cases, the Superior Court and the district court shall have concurrent jurisdiction."). Moreover, while not dispositive, the descriptive title to section 793 describes this as a "limitation of action," and this Court has already held that limitations on actions—such as a statute of limitations—are generally not jurisdictional. *See Gov't of the V.I. v. UIW-SIU*, 64 V.I. 312, 320 (V.I. 2016) (citing *Brady v. Cintron*, 55 V.I. 802, 817 n.15 (V.I. 2011)). Nor does section 793 contain any language requiring that a FED action be dismissed for lack of jurisdiction—as opposed to dismissed on another basis, such as for failure to state a claim—if a question arises as to the merits of the title. *Brooks*, 58 V.I. at 427.

¶ 27    That the Legislature did not use jurisdictional language in section 793, despite using it elsewhere in the FED statute, is powerful evidence that the Legislature did not intend to impose a jurisdictional requirement. *Id.* Rather, the more natural construction of the statute, considering the recent decisions by both this Court and the United States Supreme Court, is that the Legislature intended to impose an extraordinarily high burden of proof on the party bringing the FED action: because there can be no inquiry into the merits of the title, the party bringing the FED action is subject to the absolute highest possible burden of proof with respect to establishing title – and if that burden is not met, the remedy would not be dismissal for lack of jurisdiction, but the same remedy applicable to any other situation where a party fails to meet its burden of proof with respect to a necessary element of a cause of action: dismissal for failure to state a claim.

¶ 28    Importantly, whether the limitation set forth in section 793 represents a jurisdictional requirement or instead only goes to the merits is not merely academic, but possesses practical significance. To illustrate this, one need only look at this very case. Here, the Magistrate Division

issued a February 4, 2021 judgment that ordered Mustafa to provide immediate restitution of the premises to Keating-Smith. On internal appeal, the Superior Court determined that the Magistrate Division erred in entering that judgment because—at least in the opinion of the Superior Court—that judgment was contrary to section 793. If section 793 imposes a jurisdictional limitation, then the February 4, 2021 judgment was at all times void as having been entered by a court without subject-matter jurisdiction, and consequently was at all times a nullity that never had to be followed by anyone. *See Estate of Skepple v. Bank of Nova Scotia*, 69 V.I. 700, 733 n.26 (V.I. 2018) ("From its inception, a void judgment is a legal nullity and without legal effect, and any defect cannot be cured."). If, however, section 793 is not jurisdictional, the February 4, 2021 judgment is not void, and, absent a stay, was fully enforceable at all times prior to its reversal by the Superior Court. *Id.* ("The distinction between a void judgment and one that erroneously decided a point of law or fact is crucial because an erroneous judgment is subject only to direct attack and is described as being voidable."). Moreover, it is well-established that the defense of lack of subject-matter jurisdiction can be invoked at *any* stage of the proceeding, even after entry of a final judgment, including for the first time on appeal, whereas other legal or procedural errors may be forfeited or waived. *Tindell v. People*, 56 V.I. 138, 146 (V.I. 2012) (collecting cases).

2.   Section 793 Only Prohibits Inquiries into Title, Not Lease Agreements

¶ 29    Regardless of whether section 793 constitutes a jurisdictional limitation or only relates to the merits of an FED action, the Superior Court erred when it expanded section 793 to prohibit inquiries into the existence or validity of lease agreements. The authority relied upon by the Superior Court for its holding that a court cannot inquire into the existence or validity of a lease agreement as part of an FED action is the same authority that it cited for the proposition that section 793 represents a jurisdictional bar. In its 2008 decision in *Joseph*, this Court relied upon the Third

Circuit's 1990 decision in *Dunagan* which, in addition to characterizing section 793 as jurisdictional, stated that "relief is available in a summary FED proceeding only if there is an undisputed oral or written lease agreement, and rent is due and owing thereon; or there is an undisputed oral or written lease which has expired," and that "[c]onversely, a FED cause of action will not lie where title to the premises is in question; or where there is proved to the Court to exist a bona fide question of the existence of a lease at law or in equity, which has not yet expired." 904 F.2d at 191. And as with the issue of jurisdiction, the Third Circuit in *Dunagan* cited to only a single authority for this interpretation of section 793: the 1984 decision of the Superior Court in *Inter Car Corp.*, which made these statements without citing to any statutory language, case law (from either the Virgin Islands or any other jurisdiction), or any legal authority whatsoever. An examination of the statutory language, as well as consideration of the policy reasons for enactment of the FED statute, demonstrate that in *Inter Car Corp.* the Superior Court grossly misinterpreted section 793. As previously noted, section 793 states, in its entirety, that

> In an action to recover the possession of any land, tenement or other real property, where the entry is forcible or when the possession thereof is unlawfully held by force, **the merits of the title shall not be inquired into**, and three years' quiet possession of the premises immediately preceding the commencement of such action by the party in possession, or those under whom he holds, may be pleaded in bar thereof, unless the estate of such party in the premises is ended.

28 V.I.C. § 793 (emphasis added).

¶ 30    The Legislature has instructed that when interpreting the Virgin Islands Code, "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language" while "[t]echnical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to their peculiar and appropriate meaning." 1 V.I.C. § 42. The word "title"

is a term of art in the law and is synonymous with ownership of property. *See, e.g., Nationwide Mut. Ins. Co. v. Hayes*, 174 S.E.2d 511, 517 (N.C. 1970) ("The words 'title' and 'ownership' are words that may be used interchangeably."); *Shropshire v. Commonwealth*, 577 S.E.2d 521, 524 n.2 (Va. Ct. App. 2003) ("[W]e read the terms 'title' and 'ownership' to be synonymous."); *see also* Black's Law Dictionary 1788 (11th ed. 2019) (defining "title" as "the legal link between a person who owns property and the property itself" or "evidence of a person's ownership rights in property"). In fact, Alaska—the state whose code formed the basis for the 1921 Codes in the Virgin Islands, and whose FED statute is virtually word-for-word identical to the Virgin Islands FED statute—has expressly held "that title under [the Alaska FED statute] means ownership of the property" and that a dispute about the existence or duration of a lease is therefore "not [an] attempt to litigate the merits of the title." *Schaible v. Fairbanks Medical & Surgical Clinic, Inc.*, 531 P.2d 1252, 1259 (Alaska 1975).

¶ 31    It is worth noting, however, that the last clause of section 793 provides that "three years' quiet possession of the premises immediately preceding the commencement of such action by the party in possession, or those under whom he holds, may be pleaded in bar thereof, unless the estate of such party in the premises is ended." 28 V.I.C. § 793. Yet the term "quiet possession" is also a technical term in the law which refers to something other than occupancy. As the Alaska Supreme Court explained in interpreting identical language in the Alaska FED statute,

> [The defendant] has not cited any precedent which holds that a lessee's three years' quiet possession under a lease bars a forcible entry and detainer action. The preponderance of judicial precedent, construing substantially similar statutes, appears to be in accord with the superior court's holding that 'quiet possession' within the terms of [the FED statute] means adverse possession, not possession under a lease. We find no error here. The three-year rule is designed to apply to forcible entry cases rather than forcible detainer cases. At the time forcible entry and detainer statutes were enacted, they were an adjunct to criminal trespass statutes; if a person was forced off his land by another, the dispossessed person

*Keating-Smith v. Mustafa*               2024 VI 12
S. Ct. Civ. No. 2023-0021
Opinion of the Court
Page 22 of 29

could bring a forcible entry and detainer action to be restored to possession. We think it reasonable to construe [the FED statute] as requiring one who is forcibly dispossessed to bring an ejectment action, rather than a forcible entry and detainer action, against the person in possession if that person has been in 'quiet possession' for three years or more.

*Schaible*, 531 P.2d at 1259 (collecting cases).

¶ 32 Moreover, construing section 793 as barring an inquiry into the existence or validity of a lease agreement would be wholly inconsistent with other critical provisions of the FED statute. Section 789, titled "Failure to pay rent; expiration of lease; time for notice to quit" provides, in pertinent part, as follows:

> (a) The following shall be deemed cases of unlawful holding by force within the meaning of this chapter-
>
> > (1) When the tenant or person in possession of any premises fails or refuses to pay any rent due on the lease or agreement under which he holds, or deliver up the possession of the premises for three days after demand made for such possession;
> >
> > (2) When, after a notice to quit as provided in this chapter, any person continues in the possession of any premises at the expiration of the time limited in the lease or agreement under which such person holds, or contrary to any condition or covenant thereof, or without any written lease or agreement therefor.
>
> (b) An action for the recovery of the possession of the premises may be maintained in the case specified in subdivision (2) of subsection (a) of this section when the notice to quit has been served upon the tenant or person in possession for the period of 3 days before the commencement thereof, unless the leasing or occupation is for the purpose of farming or agriculture, in which case the notice shall be served for the period of 6 months before commencement of the action.

28 V.I.C. § 789(a)-(b). Given that section 789 expressly provides that a tenant's failure or refusal to pay rent constitutes a holding by force that would give rise to an FED action, as would a tenant's continuing to occupy the property after a lease has expired, it is not clear how section 793—a statute enacted at the same time as section 789 as part of the same comprehensive statutory

scheme—could be interpreted to preclude inquiry into the terms of the lease.

¶ 33    Last, but certainly not least, there are extraordinarily strong reasons for why the Legislature would prevent an inquiry into title but permit and not prohibit a similar inquiry into the existence or terms of a lease agreement.  The statute of frauds, also adopted as part of the 1921 Codes together with the FED statute, provides in pertinent part that

> (a) Except for a lease for a term not exceeding one year, no estate or interest in real property, and no trust or power over or concerning real property, or in any manner relating thereto, can be created, granted, assigned, transferred, surrendered, or declared, otherwise than-
>
> > (1) by operation of law; or
>
> > (2) by a deed of conveyance or other instrument in writing, signed by the person creating, granting, assigning, transferring, surrendering, or declaring the same, or by his lawful agent under written authority, and executed with such formalities as are required by law.

28 V.I.C. § 241(a).  Statutes of frauds, which have been a fixture in the legal system since the 17th century, "reflect[] concerns about the reliability of oral evidence," *General Dynamics Corp. v. United States*, 563 U.S. 478, 488 (2011), and—as the name implies—are designed to "remove uncertainty, prevent fraudulent claims, and reduce litigation." *Givens v. Dougherty*, 671 S.W.2d 877, 878 (Tex. 1984).  Moreover, Virgin Islands law provides for the recording of written conveyances and directs that such recordings "shall be admissible in evidence in any court in the Virgin Islands without further proof thereof."  28 V.I.C. § 132(a).  Because the statute of frauds precludes the transfer of ownership of property through an oral conveyance, and Virgin Islands law treats a recorded deed as evidence of a conveyance without the need for further proof, it is extraordinarily difficult for the defendant in an FED action to make a non-frivolous claim that the plaintiff does not own the property, and if such a non-frivolous claim were made, adjudicating it would almost certainly require the full panoply of procedures—such as discovery—that are

*Keating-Smith v. Mustafa*          2024 VI 12
S. Ct. Civ. No. 2023-0021
Opinion of the Court
Page 24 of 29

available in a typical civil action but not available in a summary FED proceeding.

¶ 34     In contrast, it would be fairly easy for a defendant in an FED action to assert a non-frivolous claim to possession under a lease agreement. As noted above, the statute of frauds only pertains to "a lease for a term not exceeding one year," 28 V.I.C. § 241(a), and this Court has already held that an "oral lease creating a month-to-month tenancy d[oes] not violate the Statute of Frauds merely because it continued in effect for more than one year" since "a monthly tenancy is, by definition, performed within one year," effectively treating each month as a separate tenancy "even if successive one-month terms continue beyond one year." *Peppertree Terrace v. Williams*, 52 V.I. 225, 232 n.5 (V.I. 2009) (collecting cases). Therefore, any defendant in any FED action could raise a non-frivolous challenge to any lease agreement by simply claiming the existence of a superseding oral lease that is month-to-month or otherwise for a period less than a year, based on no evidence whatsoever other than the defendant's own word. Requiring dismissal of an FED action in such circumstances would be wholly contrary to the purpose of the FED statute, which is to provide "[s]peedy adjudication" of the issue of possession "to prevent subjecting the landlord to undeserved economic loss." *Lindsey*, 405 U.S. at 71. In other words, if courts were required to dismiss an FED action because the tenant claims the existence of a different oral lease, "the tenant would be able to" continue to "deny the landlord the rights of income incident to ownership by refusing to pay rent and by preventing sale or rental to someone else," *id.*, simply by using the magic words, "We have an oral lease." And unlike adjudication of a non-frivolous challenge to ownership, the issue of whether the parties did or did not enter into an oral lease agreement is one that could in most instances be effectively adjudicated in a summary proceeding—as illustrated by

this very case.[4]

¶ 35    For these reasons, we conclude that the Superior Court erred in its April 11, 2023 order when it invoked section 793 to reverse the February 4, 2021 judgment. Because section 793 only precludes an inquiry into the merits of title, the Magistrate Division committed no error when it proceeded to consider—and ultimately reject—Mustafa's claim that he possessed an oral lease that differed from the month-to-month tenancy provided for in the written lease agreement.[5]

---

[4] We emphasize that our holding that section 793 does not divest a court of subject-matter jurisdiction or limit its authority to construe a lease agreement should not be interpreted as imposing a blanket prohibition on the transfer of an FED action to the Civil Division. While no court rule expressly provides for the transfer of an FED action, it has long been recognized that the judicial officers of the Superior Court possess the inherent authority to order a discretionary transfer of a case from one division to another division, such as when adjudication of the case would require procedures not available in the division with which the case had been originally filed. *See, e.g., In re Hailey*, 73 V.I. 575, 589 n.4 (V.I. 2020) (outlining 40-year history of cases being routinely transferred from the Small Claims Division to the Civil Division if the Small Claims Division was unequipped to handle the matter); *Saja Cloth, Inc. v. Mongoose Junction II*, 32 V.I. 315, 318 & n.5 (D.V.I. App. Div. 1995) (acknowledging that there is no authority providing "that the [Superior] Court cannot transfer or consolidate an FED case when it appears that the special FED process must be abandoned.").

    Because Mustafa did not request a transfer of the FED action to the Civil Division, but only moved for dismissal, the Magistrate Division certainly possessed no obligation whatsoever to order a transfer *sua sponte*. But while we need not define the precise contours of a judicial officer's discretionary authority to transfer a FED case to the Civil Division, that discretion must necessarily be greatly circumscribed given that the Legislature deliberately created an FED cause of action for the express purpose of providing a landlord with a quick and effective judicial remedy to regain possession of its property in lieu of self-help. Thus  we emphasize that a transfer of an FED action to the Civil Division should be extraordinarily rare in cases where there is no non-frivolous question of title to the property, and should certainly not be granted in cases such as this one where discovery is clearly unnecessary because all the evidence needed to determine the existence of, and to properly interpret the terms of, a lease agreement between the parties is available to the defendant and could easily be presented at the FED hearing.  At an absolute minimum, the need for the defendant to engage in discovery or other procedures available only in the Civil Division must demonstrably outweigh the entitlement of the plaintiff to a quick and effective judicial remedy under the FED statute.

[5] In light of this conclusion, we need not resolve Keating-Smith's claim that the Superior Court should have used a "colorable claim" standard rather than a "facially bona fide and in good faith"

**F. Escrow Payments**

¶ 36    Given our conclusion that the Superior Court erred in vacating the Magistrate Division's judgment for lack of subject-matter jurisdiction pursuant to section 793, we would ordinarily proceed to either consider the merits of Mustafa's non-jurisdictional challenges to that judgment or remand the case to the Superior Court to do so in the first instance. However, as we explained more thoroughly above, Mustafa's appeal of the portion of the February 4, 2021 judgment granting restitution of the premises to Keating-Smith has become moot, given that he voluntarily vacated the premises on February 28, 2021, and this Court cannot—nearly three years later—order Keating-Smith to transfer possession of the property back to him. While this Court has exercised its discretion to consider the merits of the Superior Court's jurisdictional determination because the issue was capable of repetition yet evading review, that exception to the mootness doctrine does not apply to any of these other non-jurisdictional issues, which are largely fact-based and involve challenges to the magistrate judge's witness credibility determinations and construction of the parties' written lease agreement and various other writings and oral statements. Thus, we only consider the merits of the one portion of the February 4, 2021 judgment that has not become moot: the portion ordering the transfer of the escrowed rent payments to Keating-Smith.[6]

---

standard to determine whether to dismiss a FED action pursuant to section 793 based on a dispute over the existence or terms of a lease agreement, since a court may inquire into the merits of a lease agreement and must not dismiss an FED action solely because the parties disagree as to its terms or existence.

[6] Because the Superior Court disposed of Mustafa's entire appeal on jurisdictional grounds, it did not address this issue in its April 11, 2023 order. Nevertheless, in the interests of judicial economy, we elect to address this claim on appeal, given that it entails a pure question of law which we review this aspect of the February 4, 2021 judgment pursuant to the same standard of review the Superior Court would utilize on remand. *See Rivera–Moreno v. Gov't of the V.I.*, 61 V.I. 279, 314 (V.I. 2014) ("[w]hen . . . this Court applies a plenary standard of review to the underlying Superior

*Keating-Smith v. Mustafa*               2024 VI 12
S. Ct. Civ. No. 2023-0021
Opinion of the Court
Page 27 of 29

¶ 37    The Magistrate Division unquestionably committed error when it ordered that Keating-Smith receive the rent monies held in escrow. The FED statute prescribes that "[e]xcept as provided in this chapter and the rules of court, an action for forcible entry and detainer shall be conducted in the same manner as other civil actions." 28 V.I.C. § 784. While in a typical civil action the "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings," V.I. R. CIV. P. 54(b), Superior Court Rule 37 establishes a different rule in FED actions,[7] providing, in its entirety, as follows:

> Summary proceedings between landlord and tenant for the recovery of possession of premises and for forcible entry and detainer which are brought under the provisions of 28 V.I.C. § 781 et seq. shall not be joined with any other cause of action; nor shall a defendant, in any such proceeding, be permitted to file a counterclaim or third-party complaint, although the defendant is permitted to raise any defenses he may have to the plaintiff's cause.

SUPER. CT. R. 37. In fact, this Court has already interpreted Superior Court Rule 37 to preclude any claims for money damages from being asserted as part of an FED action because "[i]t would frustrate the purpose of FED actions . . . if a party were permitted to complicate the proceedings

---

Court decision, it can . . . analyze [a] legal issue for the first time on appeal" in the interests of judicial economy).

[7] We note that the Virgin Islands Rules of Civil Procedure were promulgated by this Court, whereas the current Rules of the Superior Court were promulgated by the Superior Court with the approval of this Court. On several occasions involving Superior Court Rules promulgated by the Superior Court prior to the effective date of Act No. 7888, this Court held that the Superior Court could not promulgate a court rule that conflicts with a court rule adopted by this Court. *See, e.g., Gerace v. Bentley*, 65 V.I. 289, 303-04 (V.I. 2016). However, with the passage of Act No. 7888, the Superior Court became divested of its authority to promulgate rules without the approval of the Supreme Court. On April 7, 2017, this Court approved the adoption of a new set of Superior Court Rules, which repealed many provisions deemed to conflict with other law, including the Virgin Islands Rules of Civil Procedure, but retained a select number of provisions, such as Superior Court Rule 37. Because this Court has approved both Superior Court Rule 37 and Civil Rule 54(b), prior case law subordinating the Superior Court Rules to other court rules is no longer applicable.

*Keating-Smith v. Mustafa*    2024 VI 12
S. Ct. Civ. No. 2023-0021
Opinion of the Court
Page 28 of 29

by incorporating additional issues and claims for damages that could require discovery and expense to investigate." *Lehtonen v. Payne*, 57 V.I. 308, 313-14 (V.I. 2012).

¶ 38 Moreover, permitting a plaintiff to obtain a monetary recovery as part of an FED action may run afoul of the Seventh Amendment to the United States Constitution, which has been expressly extended to the Virgin Islands by virtue of the Revised Organic Act of 1954. *See* 48 U.S.C. § 1561 ("The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands . . . and shall have the same force and effect there as in the United States or in any State of the United States . . . the first to ninth amendments inclusive. . . ."). The Seventh Amendment, by its own terms, requires that a jury serve as the factfinder "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars," U.S. CONST. amend. VII. While a FED action is a suit in equity where the remedy is restitution of property and thus may be tried without a jury, *see, e.g.*, *Vinson v. Hamilton*, 854 P.2d 733, 737 & n.10 (Alaska 1993), an action for debt is a quintessential suit at common law where the remedy is monetary damages. Therefore, monetary damages in an FED action—even if the evidence is overwhelming that the plaintiff would be entitled to such funds—cannot be awarded as part of an FED action, but must be sought in a separate civil action, where both the plaintiff and defendant would be entitled to a jury trial if they so desire. *See Balboni v. Ranger Am. of the V.I., Inc.*, 70 V.I. 1048, 1127-28 (V.I. 2019) (citing 5 V.I.C. § 321 and *Samuel v. United Corp.*, 64 V.I. 512, 521 (V.I. 2016), and explaining that "the Seventh Amendment right to civil jury trial applies in the Virgin Islands," which "guarantees the right to have a jury sit as factfinder in civil cases where the amount in controversy is at least twenty dollars," and that "[t]his right extends to matters in the Superior Court"). Accordingly, we reverse the portion of the February 4, 2021 judgment that orders payment of the escrowed rent to Keating-Smith.

### III. CONCLUSION

¶ 39    Because Mustafa vacated the premises on February 28, 2021, the portion of this appeal relating to the restitution of premises is moot.  Nevertheless, given the importance of the issue, we exercise discretion to resolve the question of the Magistrate Division's subject-matter jurisdiction, given the likelihood of that issue evading review and arising again in the future.  We conclude that the limitation set forth in section 793 is not jurisdictional and also extends only to inquiries as to title, i.e. ownership, rather than possession generally or the existence or terms of a lease agreement. With respect to the merits of the only portion of the February 4, 2021 judgment that has not become moot, we hold that the Magistrate Division erred when it provided Keating-Smith with a monetary recovery as part of the FED action.  Accordingly, we reverse the Superior Court's April 11, 2023 order directing the dismissal of the FED action for lack of jurisdiction, and vacate the portion of the February 4, 2021 judgment ordering distribution of the escrowed rent.

**Dated this 6th day of March, 2024.**

                                                  **BY THE COURT:**


                                                  **/s/ Rhys S. Hodge_____**
                                                  **RHYS S. HODGE**
                                                  **Chief Justice**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By: /s/ Reisha Corneiro**
   **Deputy Clerk II**

**Dated**: **March 6, 2024**